RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

AUGUST CASSANO,

*Petitioner-Appellant*,

*v.*

TIM SHOOP, Warden,

*Respondent-Appellee*.

No. 18-3761

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:03-cv-01206—John R. Adams, District Judge.

Argued: April 28, 2021

Decided and Filed: June 17, 2021

Before: SILER, CLAY, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Adam M. Rusnak, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE
SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE
OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Adam
M. Rusnak, Erin G. Barnhart, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE
SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE
OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

CLAY, J., delivered the opinion of the court in which DONALD, J., joined. SILER, J.
(pp. 27–29), delivered a separate dissenting opinion.

---

**OPINION**

---

CLAY, Circuit Judge.   Petitioner August Cassano, an Ohio prisoner under a death sentence, appeals from the district court's denial of his second Amended Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254.  The district court granted Cassano a Certificate of Appealability on five of his requested grounds for relief, and we granted an expansion of the Certificate of Appealability to include two additional claims.  For the reasons set forth below, Cassano is entitled to relief on his claim that his constitutional rights under *Faretta v. California*, 422 U.S. 806 (1975), were violated.  Accordingly, we **REVERSE** the judgment of the district court and **CONDITIONALLY GRANT** Cassano's federal habeas petition, unless the State retries him within six months.

**BACKGROUND**

**I.  Factual Background**

In October 1997, Cassano was serving a prison sentence at Mansfield Correctional Institution ("MANCI") for a 1976 conviction of aggravated murder.  On October 17, 1997, Walter Hardy was moved into Cassano's cell.  Hardy had previously been assigned to the segregation unit based on suspicion of possessing a shank, but he had been exonerated.  Cassano was extremely upset about having Hardy as his cellmate.  Cassano told one MANCI sergeant/counselor that "he didn't want that snitching ass faggot in his cell and that we better check [Cassano's] record." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 7.  He also told authorities, "You just can't put any type of motherfucker in my cell, * * * check my record." *Id.*   When another inmate mentioned that Cassano had a new cellmate, Cassano responded, "Not for long." *Id.* at ¶ 8.  After Hardy broke a TV cable outlet, Cassano told a different inmate that Hardy "was driving him nuts," and that if Hardy was not removed from his cell, "he would * * * remove him himself." *Id.* at ¶ 9.  Despite Cassano's complaints, Hardy was not removed from the cell.

In the early morning on October 21, 1997, upon hearing a commotion, Donald Oats, a MANCI correctional officer, rushed to Cassano's cell. When he arrived, he saw Cassano and Hardy fighting and ordered them to stop. While he went to call for help, Oats heard Hardy yell, "[Cassano] has a knife and he's * * * trying to kill me." *Id.* at ¶ 10. Oats then looked into the cell and saw Cassano standing over Hardy and stabbing him with a shank. Oats ordered Cassano to stop, but Cassano looked at him twice and then "went right back to sticking inmate Hardy." *Id.* at ¶ 11.

Two more correctional officers, James Miller and Dwight Ackerman, then arrived on the scene. Ackerman saw Cassano "assaulting the other inmate" and ordered him to stop. *Id.* at ¶ 12. In response, Cassano stood up, revealing a shank in his right hand, but then continued stabbing Hardy. Miller then tried ordering Cassano to stop, but Cassano "didn't look at [Miller.] He looked down and plunged a weapon into inmate Hardy." *Id.* Eventually, Oats entered the cell and Cassano finally ended the attack. Hardy was taken to a hospital, but, about an hour later, he was pronounced dead from his approximately seventy-five stab wounds.

## II. Procedural Background

In March 1998, a Grand Jury indicted Cassano for aggravated murder with two death specifications: one alleged that "the offense was committed while [Cassano] was a prisoner in a detention facility," and the other alleged that "prior to the offense" in the indictment, Cassano was convicted of aggravated murder. (R. 134-1 at PageID# 841.) At his arraignment, through his court appointed counsel, Robert H. Whitney and Bernard R. Davis, Cassano entered a plea of not guilty.

On May 14, 1998, Cassano filed a *pro se* Waiver of Counsel explaining that "he would rather control the organization and content of his defense, be able to file motions, argue points of laws, call favorable witnesses, cross-examine any adverse witnesses and be allowed to conduct his defense in a manner considered fundamental to the fair administration of American justice." (R. 134-1 at PageID# 863.) On the same day, Cassano also filed a *pro se* Motion for Appointment of Substitute Counsel asserting that Whitney and Davis were ineffective. In this motion, Cassano explained that his counsel rarely visited him, failed to provide him with updates

on the case, and frequently lied to him.  He therefore requested that Kort Gatterdam be appointed counsel.

Whitney and Davis then filed a motion to withdraw, which the trial court granted.  The trial court also appointed the Ohio Public Defender's Office to represent Cassano, as well as Douglas R. Sexton as local counsel.  Andrew Love and Gatterdam later entered appearances on behalf of the Ohio Public Defender to represent Cassano.  Love was the only member of the trio certified as lead counsel under Ohio rules for representing an indigent defendant charged with a capital offense.  No explicit ruling was made on Cassano's Waiver of Counsel.

On September 25, 1998, Cassano filed a Motion for Appointment of Co-Counsel requesting that the trial court appoint Gatterdam as his own co-counsel in the case.  That same day, at a pretrial hearing, the trial court explained that Cassano "has filed a motion to appoint co-counsel to represent him while he represents himself," and denied the motion on the grounds that Cassano "not being trained in the law, is not capable, in my estimation, to represent himself." (R. 135-1 at PageID# 4242.)  The court then informed Cassano that "you're not going to represent yourself in this matter.  If you wish to say a word on the record about that, you can. But thereafter you won't be speaking in the courtroom.  I'm in charge of the courtroom, not you. You will never be in charge of this courtroom." (*Id.* at PageID# 4243.)

The issue of Cassano's representation next arose during an April 23, 1999 pretrial hearing.  At the hearing, Cassano raised as a "concern" that his "lead counsel, which is Andy Love, he's not going to be prepared for my trial, because he's still at this other one, and I would like my lead counsel to be here and be prepared when my trial starts." (R. 135-4 at PageID## 4562–63.)  The trial court responded that, even though "[t]he trial is scheduled to start Monday," because Love was not participating in *voir dire*, he would have enough time to prepare for Cassano's trial. (*Id.* at PageID# 4563.)  Gatterdam then jumped in and asserted that Love had "not looked at anything on the Cassano matter since some time in February of 1999." (*Id.* at PageID## 4562–63.)

After Gatterdam finished explaining Love's lack of preparation for Cassano's trial due to his other capital trial, Cassano inquired, "[i]s there any possibility I could represent myself?  I'd

like that to go on record." (*Id.* at PageID# 4564.).  The court responded, "[w]e've talked about it before.  I think I'd be doing you a disservice by allowing that.  You have very competent and very engaging attorneys and I believe they should be representing you.  It would be in your best interest not to represent yourself.  I wouldn't be representing myself if I were charged." (*Id.* at PageID## 4564–65.)  The issue of Cassano's trial representation was not addressed again.

Three days later, on April 26, 1999, represented by Love, Gatterdam, and Sexton, Cassano's trial began.  At trial, Cassano testified that he had acted in self-defense after Hardy sought to attack him with the shank.  But on May 13, 1999, the jury returned a verdict of guilty on the aggravated murder charge and both specifications.

The mitigation phase of the capital trial began four days later, and lasted two days.  On May 18, 1999, the jury returned its sentencing verdict for a death sentence.  After performing the statutorily required independent weighing of the aggravating circumstances and mitigating factors, the trial court sentenced Cassano to death.

Represented by new counsel, Cassano timely appealed his convictions and sentence to the Ohio Supreme Court.  The Ohio Supreme Court affirmed the trial court's judgment after reviewing Cassano's fourteen propositions of law and determining that none justified reversing his convictions or sentence.  *See Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 30.  Cassano then moved the Ohio Supreme Court to rehear Proposition of Law I, an argument that the trial court erred in refusing his requests to represent himself.  On September 25, 2002, the court denied the motion without opinion.  On March 3, 2003, the United States Supreme Court denied Cassano's petition for a writ of certiorari.  *See Cassano v. Ohio*, 537 U.S. 1235 (2003).

Because Cassano had indicated an intent to pursue postconviction relief, while his direct appeal proceedings were ongoing, the trial court appointed counsel for Cassano's postconviction proceedings.  After substitute counsel was appointed upon Cassano's request, on December 9, 1999, Cassano filed a *pro se* motion to waive postconviction relief.  On February 15, 2000, the trial court granted Cassano's motion.  Almost a year later, on January 17, 2001, in another *pro se*

motion, Cassano changed his position and sought to reinstate his postconviction proceedings. No action appears to have been taken by the trial court in response to this motion.

Three years later, in a one week span early in 2004, through counsel, Cassano filed a flurry of motions in different proceedings. On February 26, 2004, Cassano filed a motion to reinstate his postconviction proceedings and for the appointment of counsel to file a petition for postconviction relief. The next day, he moved for the appointment of counsel for purposes of filing an application to reopen his direct appeal to present claims of ineffective assistance of appellate counsel. And on March 2, 2004, he filed a timely Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio.

Based on his efforts to reinstate his state postconviction proceedings and to reopen his direct appeal, on March 5, 2004, Cassano moved the district court to stay all proceedings in federal court and to hold this action in abeyance while he pursued relief in state court. The district court denied Cassano's motion without prejudice to him refiling should the Ohio state courts determine that he was entitled to either reinstate his postconviction proceedings or reopen his direct appeal.

On March 15, 2004, the Ohio Supreme Court ordered the trial court to appoint counsel for purposes of filing an application to reopen Cassano's direct appeal. However, on October 13, 2004, the Ohio Supreme Court denied Cassano's subsequently filed application for reopening as untimely.

Meanwhile, in Cassano's state postconviction proceedings, the trial court granted Cassano's motion for the appointment of counsel. Armed with the state trial court's appointment of counsel and some other indicators that the trial court intended to allow Cassano to engage in postconviction proceedings, Cassano returned to the district court and filed a renewed motion to stay the federal habeas proceedings and hold the proceedings in abeyance pending the exhaustion of his state court proceedings. On February 10, 2005, the district court granted Cassano's motion.

Notwithstanding the earlier signs that the trial court would allow Cassano to seek state postconviction relief, on March 26, 2007, the trial court denied Cassano's request to reinstate his

postconviction proceedings.   However, Cassano appealed, and the Ohio Court of Appeals vacated the trial court's decision.  *See State v. Cassano*, 5th Dist. Richland No. 07CA27, 2008-Ohio-1045, ¶ 16.   Accordingly, on May 3, 2011, Cassano filed an amended petition for postconviction relief.  He also filed a motion to recuse the trial court judge asserting that the judge was biased.  The recusal motion was mooted when the trial court judge voluntarily recused himself and a new judge was assigned to the case.

On June 18, 2012, the newly assigned trial court judge dismissed Cassano's amended petition for postconviction relief.  The Ohio Court of Appeals affirmed, *see State v. Cassano*, 5th Dist. Richland No. 12CA55, 2013-Ohio-1783, ¶ 80, the Ohio Supreme Court declined to accept jurisdiction of Cassano's appeal, *see State v. Cassano*, 142 Ohio St.3d 1516, 2015-Ohio-2341, 33 N.E.3d 65, and, on February 29, 2016, the U.S. Supreme Court denied Cassano's petition for a writ of certiorari, *see Cassano v. Ohio*, 136 S. Ct. 1158 (2016).

On March 11, 2016, Cassano returned to the district court and filed a status report informing the district court that his state court litigation had concluded and that the stay could be lifted.  On March 17, 2016, the district court lifted the stay and, on June 24, 2016, Cassano filed an Amended Petition for a Writ of Habeas Corpus.  On April 3, 2017, Cassano filed a second Amended Petition for a Writ of Habeas Corpus asserting fifteen grounds for relief (with numerous subclaims included within).  The Warden filed a return of writ on May 8, 2017, and Cassano filed a traverse on June 22, 2017.

On July 18, 2018, the district court denied Cassano's second Amended Petition for a Writ of Habeas Corpus.  *See Cassano v. Bradshaw*, No. 03-1206, 2018 WL 3455531, at *1 (N.D. Ohio July 18, 2018).  The district court granted a Certificate of Appealability on five claims: (1) that the trial court erred in refusing to allow Cassano to represent himself at trial; (2) that the trial court wrongly ordered Cassano to wear a stun belt and be shackled during trial; (3) that the trial court judge was biased; (4) that Cassano's trial counsel were ineffective for failing to investigate the trial court judge's alleged bias, and to request the judge's withdrawal or recusal from the case; and (5) that Cassano's trial counsel were also ineffective for failing to investigate, develop, and present evidence of his mental health during the penalty phase of the trial.  *See id.* at *57.

Cassano timely appealed, and, on August 5, 2019, he filed a motion to expand the Certificate of Appealability to include three more of the claims denied by the district court. We granted Cassano's motion in part, and expanded the Certificate of Appealability to include two more claims: (1) that trial counsel were ineffective for failing to challenge alleged jury misconduct; and (2) that direct appeal counsel were ineffective in failing to preserve Cassano's right to file a timely application to reopen his direct appeal.

## DISCUSSION

"This Court reviews a district court's decision regarding a writ of habeas corpus *de novo*." *Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007) (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)). "Because the district court did not conduct an evidentiary hearing but rather relied on the trial transcript in making its fact findings, we must review the district court's factual findings *de novo*." *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004) (citing *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003)).

Cassano's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003). AEDPA precludes federal courts from providing relief on habeas claims that were previously adjudicated on the merits in state court unless the state-court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting 28 U.S.C. § 2254(e)(1)). However, when the last state court to review the claim did not adjudicate it on the merits, "AEDPA deference is . . . inappropriate" and this Court reviews the claim *de novo*. *Maslonka v. Hoffner*, 900 F.3d 269, 278 (6th Cir. 2018) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)); *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *Chase v. MaCauley*, 971 F.3d 582, 596 (6th Cir. 2020); *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

**Cassano's Claim That He Was Denied His Constitutional Right to Self-Representation**

In *Faretta v. California*, the Supreme Court established that the "Sixth Amendment guarantees a criminal defendant the right to counsel, as well as the corollary right to waive counsel and proceed *pro se* even when the court believes that it would not be advisable." *United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017) (citing *Faretta*, 422 U.S. at 807, 819–820). However, "[a] defendant must assert the right to self-representation clearly, unequivocally, and in a timely manner," *id.*, and the right "may be deemed forfeited as a threshold matter" if the defendant fails to do so, *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (en banc). But in situations where a defendant clearly, unequivocally, and timely invokes the right to self-representation, the trial court must inform the defendant "of the dangers and disadvantages of self-representation," *Faretta*, 422 U.S. at 835 (citation omitted), and conduct a "'searching or formal inquiry' to ensure that [the] waiver [of counsel] is knowing, intelligent, and voluntary," *Hill*, 792 F.3d at 677 (quoting *Patterson v. Illinois*, 487 U.S. 285, 292 & n.4 (1988)). This *Faretta*-compliant hearing must be held without delay. *See Raulerson v. Wainwright*, 469 U.S. 966, 970 (1984) (Marshall, J., dissenting from the denial of certiorari) ("[O]nce a defendant affirmatively states his desire to proceed *pro se*, a court should cease other business and make

the required inquiry . . . . Delay in holding a hearing after the right is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust."). And, at the conclusion of the *Faretta* hearing, if the defendant continues to "insist[] that he wants to conduct his own defense," and the trial court is satisfied that the waiver is knowing, intelligent, and voluntary, the Sixth Amendment does not allow the State "to force a lawyer upon him." *Faretta*, 422 U.S. at 807. Moreover, "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

It is undisputed that the trial court in this case never conducted a *Faretta*-compliant hearing. At issue, however, is whether Cassano ever clearly, unequivocally, and timely invoked his constitutional right to conduct his own defense. Cassano argues that he did so on three separate occasions: May 14, 1998, September 25, 1998, and April 23, 1999. We agree that on both May 14, 1998 and April 23, 1999, Cassano properly invoked his constitutional right to self-representation and, accordingly, that he is entitled to relief.

### I. May 14, 1998

On May 14, 1998, Cassano filed a Waiver of Counsel. He argues that the Waiver of Counsel was a clear, unequivocal, and timely invocation of his Sixth Amendment right to self-representation. On direct appeal, in its recitation of the background to Cassano's *Faretta* claims, the Ohio Supreme Court referenced the Waiver of Counsel. *See Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 33. But when rejecting "Cassano's claim that his rights of self-representation were violated," the Ohio Supreme Court never mentioned the Waiver of Counsel, and, in fact, stated that "Cassano's only written motion . . . was made in September 1998" and that "Cassano did not mention that he wanted to represent himself alone until April 23, 1999." *Id.* at ¶ 37.

In reviewing the Ohio Supreme Court's denial of this claim, we "face[] a crucial threshold question: whether the state court actually adjudicated [Cassano's] claim on the

merits." *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018); *see also Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 753 (6th Cir. 2021). As explained above, if we "determine[] that the state court did so, AEDPA deference applies." *Id.* But if "the state court did not so adjudicate the claim, the claim is reviewed *de novo* for questions of law, and for clear error as to questions of fact." *Id.* (citing *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011)).

Where, as here, "a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). One situation where this presumption can be rebutted is "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." *Id.* at 303. In such a situation, "§ 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.*; *see also Nian*, 994 F.3d at 755; *Wofford v. Woods*, 969 F.3d 685, 697 (6th Cir. 2020).

The Ohio Supreme Court recognized in its factual background to Cassano's *Faretta* claims that Cassano "had filed several *pro se* motions, including a waiver of counsel, on May 14, 1998." *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 33. Nonetheless, in its analysis of Cassano's *Faretta* claims, the Ohio Supreme Court incorrectly referred to Cassano's September 25, 1998 motion as the "only written motion," and his statements at the April 23, 1999 hearing as the only time he "mentioned[ed] that he wanted to represent himself." *Id.* at ¶ 37. And despite explicitly addressing whether Cassano invoked his right to self-representation on either September 25, 1998 or April 23, 1999, through what appears to be "sheer inadvertence," the Ohio Supreme Court did not address the May 14, 1998 Waiver of Counsel. *Williams*, 568 U.S. at 303; *see also Brown v. Romanowski*, 845 F.3d 703, 711–12 (6th Cir. 2017). Therefore, we conclude that the Ohio Supreme Court "inadvertently overlooked" the May 14, 1998 Waiver of Counsel when ruling on Cassano's *Faretta* claims, and, accordingly, AEDPA deference does not apply to this claim. *Id.*; *see also Nian*, 994 F.3d at 755.

Turning to the merits of this *Faretta* claim, in his Waiver of Counsel, Cassano stated that he "waives counsel in the above-captioned case as is his constitutional right" because "he would rather control the organization and content of his defense, be able to file motions, argue points of

laws, call favorable witnesses, cross-examine any adverse witnesses and be allowed to conduct his defense in a manner considered fundamental to the fair administration of American justice." (R. 134-1 at PageID# 863.) The Waiver of Counsel was undoubtedly a clear and unequivocal invocation of Cassano's constitutional right to self-representation. *See McKaskle*, 465 U.S. at 174 (explaining that a "*pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial."). However, based on Cassano's Motion for Appointment of Substitute Counsel—also filed on May 14, 1998—requesting that Gatterdam be appointed counsel, the district court held that Cassano did not unequivocally invoke his right to self-representation. *See Cassano*, 2018 WL 3455531, at *24. Relying on the Supreme Court's decision in *McKaskle v. Wiggins*, the district court also held that "Cassano abandoned his May 19[9]8 request to waive counsel when he accepted new counsel without complaint." *Id.* (citing *McKaskle*, 465 U.S. at 182).

As an initial matter, *McKaskle* is inapposite. In *McKaskle*, the Supreme Court explained that a *pro se* defendant's claim that standby counsel interfered unacceptably can be undermined by the "defendant's solicitation of or acquiescence in certain types of participation by counsel." 465 U.S. at 182. But nothing in *McKaskle* requires a defendant "to reassert his [*Faretta*] motion or continually object to the court's denial of his motion after the court had clearly denied his request."[1] *Freeman v. Pierce*, 878 F.3d 580, 590 (7th Cir. 2017). In fact, "*Faretta* affirms why this is so. After Faretta's request was denied and he proceeded to trial with counsel, the Court did not find that Faretta acquiesced to representation by counsel, or that he waived the right to represent himself." *Id.* (citing *Faretta*, 422 U.S. at 810–11). Thus, we have rejected the district court's interpretation of *McKaskle*, *see Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008), as has "every other circuit that has encountered" the "acquiescence and waiver argument" relied upon by the district court in this case, *Freeman*, 878 F.3d at 590 (citing *Batchelor v. Cain*,

---

[1]Because Cassano's two motions were contradictory, the trial court's decision to appoint substitute counsel implied a denial of Cassano's request for self-representation. *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966) ("While it is certainly the better practice to specifically rule on all pending motions, the determination of a motion need not always be expressed but may be implied by an entry of an order inconsistent with granting the relief sought."). In any event, as explained below, at the next hearing held in Cassano's case, the trial court issued a blanket denial of any request from Cassano to represent himself.

682 F.3d 400, 412 (5th Cir. 2012); *Buhl v. Cooksey*, 233 F.3d 783, 803 (3d Cir. 2000); *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000); *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir. 1994)).

Whether the trial court was required to hold a *Faretta* hearing after receiving the two contradictory motions on May 14, 1998 is a more complex issue. A defendant is constitutionally entitled to waive their right to counsel even after previously seeking court appointed counsel. Thus, if Cassano first requested substitute counsel, then his subsequent Waiver of Counsel superseded the earlier motion and constituted a clear and unequivocal invocation of his *Faretta* rights. *See, e.g.*, *United States v. Evans*, 559 F. App'x 475, 481–83 (6th Cir. 2014) (holding that a defendant invoked his right to self-representation after his motion for substitute counsel was denied earlier in the hearing). But if the reverse is true, that Cassano first sought to waive counsel but then changed his mind and requested substitute counsel before there was an opportunity for the trial court to hold a *Faretta* hearing, then Cassano's prior unequivocal *Faretta* invocation was likely superseded, and the trial court committed no error in appointing counsel without holding a *Faretta*-compliant hearing.

The trial court made no finding as to which motion Cassano filed first. Nor could it. Cassano signed both motions on May 12, 1998, both motions were received by the court at approximately the same time on May 14, 1998, and neither motion mentioned the other. However, rather than hold a hearing to determine whether Cassano sought to invoke his constitutional right to self-representation, without even acknowledging Cassano's Waiver of Counsel, the trial court appointed counsel for Cassano. And, as explained below, at the beginning of the next hearing held in Cassano's case, the trial court informed Cassano that no self-representation request would be entertained. Considering that the Waiver of Counsel was an unequivocal assertion of Cassano's constitutional right to self-representation, and that there was no way to know the sequence of the two motions without holding a hearing, on *de novo* review, we conclude that it was improper for the trial court to not hold a *Faretta* hearing after receiving Cassano's Waiver of Counsel.

In sum, the Constitution guaranteed Cassano the right to represent himself. To be sure, he was required to "clearly and unequivocally assert[] his right to proceed *pro se*." *United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004). But Cassano did so. His May 14, 1998 Waiver of

Counsel clearly and unequivocally specified that he was waiving his right to counsel and that he wanted to conduct his own defense. And although Cassano separately requested the appointment of substitute counsel, there is no way to know from the record which motion was filed first. Therefore, once Cassano filed his unequivocal Waiver of Counsel, and with no definitive later indication that Cassano no longer wished to represent himself, the trial court was required to conduct a *Faretta* hearing. Because the trial court denied Cassano's May 14, 1998 Waiver of Counsel without holding a *Faretta* hearing, Cassano's conviction cannot stand. Accordingly, Cassano's habeas petition must be granted.

## II. September 25, 1998

Although we conclude that the trial court's failure to hold a *Faretta* hearing after its receipt of Cassano's May 14, 1998 Waiver of Counsel is alone grounds for granting Cassano's petition, we proceed to analyze the remaining two potential invocations of Cassano's right to self-representation.

Likely because Cassano recognized that the trial court's appointment of counsel constituted a denial of his Waiver of Counsel, *see Wimberly*, 364 F.2d at 227, on September 25, 1998, Cassano filed a Motion for Appointment of Co-Counsel requesting that the trial court implement "Hybrid Representation, (i.e., where the Defendant represents himself as co-counsel along with an attorney)." (R. 134-3 at PageID# 1301.) *See Faretta*, 422 U.S. at 810 (noting that after Faretta's request for self-representation was denied, he requested leave "to act as co-counsel" with the appointed public defender). Unlike in his Waiver of Counsel, Cassano explained that he did "not want to waive representation by counsel"—he now simply wanted to "tak[e] a more active role in trial." (R. 134-3 at PageID## 1304–05.)

At the hearing held the same day, the trial court appeared to treat Cassano's motion as a request to proceed *pro se*, and in what can only be characterized as a severe misunderstanding of *Faretta*, explained that it would be

> overrul[ing] that motion subject to changing the decision at some later time, provided that the law requires me to allow him to represent himself.
>
> The reason being, of course that the defendant, not being trained in the law, is not capable, in my estimation, to represent himself. That the attorneys who are

trained and experienced in these matters can, in fact, represent him, and I would be setting him up to be represented by ineffective assistance of counsel should I allow him to represent himself. That would be absolutely improper in my estimation.

(R. 135-1 at PageID## 4242–43.) *But see Faretta*, 422 U.S. at 834–35 & n.46 (explaining that a defendant "need not himself have the skill and experience of a lawyer" to represent himself, and that a defendant who opts for self-representation "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").**2** And when Gatterdam inquired as to whether the trial court would allow Cassano to respond, without holding a *Faretta*-compliant hearing, the trial court stated:

Mr. Cassano, you're not going to represent yourself in this matter. If you wish to say a word on the record about that, you can. But thereafter you won't be speaking in the courtroom. I'm in charge of the courtroom, not you. You will never be in charge of this courtroom. You understand that?

(R. 135-1 at PageID# 4243.) Cassano then stated, "I have a right to be co-counsel with my attorneys," and when the trial court asked him where he "read that in the Constitution," Cassano responded, "*Faretta v. California*." (*Id.*) The trial court replied, "[w]hat I'm saying is that I can't allow you to represent yourself when it would be setting you up to have ineffective assistance of counsel." (*Id.* at PageID## 4243–44.)

Cassano argues that his September 25, 1998 motion, as well as his oral citation to *Faretta* at the hearing, sufficed to invoke his right to self-representation. However, "[i]t is well settled that there is no constitutional right to hybrid representation." *Cromer*, 389 F.3d at 681 n.12 (citing *United States v. Mosely*, 810 F.2d 93, 98 (6th Cir. 1987); *McKaskle*, 465 U.S. at 183).

---

**2**As explained above, the record demonstrates that the Ohio Supreme Court inadvertently overlooked Cassano's claim that he invoked his right to self-representation through his May 14, 1998 Waiver of Counsel and, accordingly, did not adjudicate it on the merits. Assuming for the sake of argument that the Ohio Supreme Court did not overlook that claim and adjudicated it on the merits, because the court did not provide its reason for denying the claim, this Court would "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and would "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Based on the trial court's comments at the September 25, 1998 hearing, it is clear that the trial court's rationale for denying Cassano's Waiver of Counsel was "contrary to, or involved an unreasonable application of" *Faretta*. 28 U.S.C. § 2254(d)(1). Therefore, even if the Ohio Supreme Court adjudicated on the merits Cassano's *Faretta* claim based on the May 14, 1998 Waiver of Counsel, *de novo* review would apply.

Accordingly, "[a] defendant who seeks merely to supplement his counsel's representation, . . . has failed to avail himself of his right to self-representation and thus failed to waive his right to the assistance of counsel." *Id.* at 683. As Cassano's September 25, 1998 motion requested a form of hybrid representation where he would "continue[] to receive substantial assistance from counsel" throughout all trial functions, *id.*, and his oral citation to *Faretta* at the hearing on his motion was in support of his assertion that he had a "right to be co-counsel with [his] attorneys," the Ohio Supreme Court's merits determination that, on September 25, 1998, Cassano only sought hybrid representation, was not unreasonable. (R. 135-1 at PageID# 4243.) Therefore, notwithstanding the trial court's erroneous understanding of the Sixth Amendment right to self-representation, under AEDPA, we defer to the Ohio Supreme Court's reasonable conclusion that Cassano failed to invoke his right to self-representation on September 25, 1998.

### III. April 23, 1999

At the April 23, 1999 pretrial hearing, after a discussion between the trial court, Gatterdam, and Cassano about Love's unpreparedness for trial, Cassano asked the trial court: "[i]s there any possibility I could represent myself? I'd like that to go on record." (R. 135-4 at PageID# 4564.) In direct contravention of *Faretta*'s holding that a defendant is entitled to self-representation even when they could "better defend with counsel's guidance," 422 U.S. at 834; *see also Godinez v. Moran*, 509 U.S. 389, 400 (1993) ("[A] criminal defendant's ability to represent himself has no bearing on his competence to *choose* self-representation."), the trial court denied the request explaining that "[w]e've talked about it before. I think I'd be doing you a disservice by allowing that. You have very competent and very engaging attorneys and I believe they should be representing you. It would be in your best interest not to represent yourself. I wouldn't be representing myself if I were charged." (R. 135-4 at PageID## 4564–65.)

Nonetheless, on direct appeal, the Ohio Supreme Court denied Cassano's *Faretta* claim on the basis that: (1) "Cassano's April 23, 1999 statement was not an explicit and unequivocal demand for self-representation;" (2) "Cassano's request was untimely because it was made only three days before the trial was to start;" (3) "Cassano made this remark about representing himself as an attempt to delay the trial;" and (4) "Cassano abandoned any intention to represent

himself when he did not pursue the issue of self-representation after the court told him it would not be a good idea." *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶¶ 39–42.

As an initial matter, although this Court reviews only the Ohio Supreme Court's reasons for denying Cassano's claim, *see Wilson*, 138 S. Ct. at 1192, it is worth noting that none of these reasons were asserted by the trial court. The trial court understood Cassano to be seeking to represent himself, and it did not hold that his request was untimely or merely a delay tactic. Instead, the trial court improperly denied Cassano's request because it did not believe that self-representation was in his "best interest." (R. 135-4 at PageID# 4565.) Regardless, none of the Ohio Supreme Court's reasons are entitled to AEDPA deference, and the trial court's denial of Cassano's April 23, 1999 self-representation request entitles him to a new trial.

### A. The Ohio Supreme Court's holding that "Cassano's April 23, 1999 statement was not an explicit and unequivocal demand for self-representation"

Although the Ohio Supreme Court did not explain why it believed that Cassano's April 23, 1999 statement was not an explicit and unequivocal demand for self-representation, the district court asserted that the Ohio Supreme Court's conclusion was not unreasonable because Cassano's statement was in the form of a question instead of a demand. *See Cassano*, 2018 WL 3455531, at *25. But for a defendant to invoke their Sixth Amendment right to self-representation, all *Faretta* requires is that it be clear that the defendant wants to waive their right to the assistance of counsel. *See* 422 U.S. at 835. *Faretta* does not impose a formalistic phrasing requirement that the invocation take the form of a demand, *i.e.*, "I want to represent myself," as opposed to a question, *i.e.*, "Can I represent myself?" Rather, as long as the defendant "clearly and unequivocally declare[s] to the trial judge that he want[s] to represent himself and [does] not want counsel," *Faretta* requires that the defendant be allowed to "conduct his own defense." *Id.* at 835–36. For example, we have held that a defendant who asked, "Can I go *pro se*?" clearly and unequivocally invoked his *Faretta* rights. *Moore*, 531 F.3d at 396, 402–03. Similarly, Cassano invoked his *Faretta* rights through his April 23, 1999 query of "[i]s there any possibility I could represent myself?" (R. 135-4 at PageID# 4564.)

To grant Cassano relief under AEDPA, however, it is not enough to conclude that the Ohio Supreme Court "applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Because "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," *id.* at 410, to grant relief, this Court must determine that it was an unreasonable application of *Faretta* for the Ohio Supreme Court to hold that when Cassano asked "[i]s there any possibility I could represent myself?" he did not clearly and unequivocally assert his right to self-representation. (R. 135-4 at PageID# 4564.) "[T]his standard is difficult to meet." *Richter*, 562 U.S. at 102. "[S]o long as 'fairminded jurists could disagree' on the correctness of the [Ohio Supreme Court's] decision" habeas relief is precluded. *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, the inquiry turns to whether any fairminded jurist could conclude that Cassano did not clearly and unequivocally invoke his Sixth Amendment right to self-representation at the April 23, 1999 hearing.

We hold that nothing about Cassano's request was unclear or equivocal, and no fairminded jurist could conclude otherwise. "Is there any possibility I could represent myself?" is not ambiguous. (R. 135-4 at PageID# 4564.) There is no reasonable interpretation of the statement other than as a request by Cassano to represent himself. The analogous context of a criminal suspect invoking a different constitutional right—the Fifth Amendment right to counsel—is illustrative. The Supreme Court has held that a suspect who "makes a reference to an attorney that is ambiguous or equivocal" has not invoked the right. *Davis v. United States*, 512 U.S. 452, 459 (1994). But to invoke the right, the Supreme Court has also held that "a suspect need not speak with the discrimination of an Oxford don." *Id.* (internal quotations and citations omitted). Just as no fairminded jurist would hold that a criminal suspect who, in an interrogation, asks "is there any possibility I could have a lawyer?" has made an "ambiguous or equivocal" invocation of their Fifth Amendment right to counsel, *id.*, no fairminded jurist would conclude that a criminal defendant who asks "[i]s there any possibility I could represent myself?" has not "clearly and unequivocally declared to the trial judge that he want[s] to represent himself and [does] not want counsel," *Faretta*, 422 U.S. at 835. In fact, the trial court understood that Cassano was seeking to represent himself and responded that "[i]t would be in your best interest not to represent yourself. I wouldn't be representing myself if I were charged." (R. 135-4 at

PageID## 4564–65.) *See United States v. Farias*, 618 F.3d 1049, 1052 (9th Cir. 2010) (relying on the district court's understanding of a defendant's request to hold that the defendant unequivocally invoked his right to self-representation).

Moreover, context matters. *Cf. Tolliver v. Sheets*, 594 F.3d 900, 922 (6th Cir. 2010) (holding that it was necessary to consider the context of a disputed invocation of the Fifth Amendment right to counsel). And when context is considered, the unreasonableness of the Ohio Supreme Court's holding is magnified. Cassano's April 23, 1999 request to represent himself was in response to a lengthy discussion about his lead counsel's lack of preparedness for trial. Cassano expressed his "concern" that Love "was not going to be prepared for [his] trial" due to his ongoing involvement in a different capital trial. (R. 135-4 at PageID## 4562–63.) After the trial court disagreed with Cassano about Love's ability to be prepared for trial, Cassano responded, "Is there any possibility I could represent myself?" (*Id.* at PageID# 4564.) Considering that Cassano had just finished explaining that he believed that his lead counsel was unprepared for trial, no fairminded jurist could conclude that Cassano's statement was unclear or equivocal.

Furthermore, any equivocality in Cassano's request was explained by the trial court's previous harsh misstatements of law with respect to his *Faretta* rights. As explained above, on September 25, 1998, the trial court incorrectly told Cassano that he did not understand "the law" to require it "to allow him to represent himself." (R. 135-1 at PageID# 4242.) When Cassano sought to respond, the trial court told him:

> Mr. Cassano, you're not going to represent yourself in this matter. If you wish to say a word on the record about that, you can. But thereafter you won't be speaking in the courtroom. I'm in charge of the courtroom, not you. You will never be in charge of this courtroom. You understand that?

(*Id.* at PageID# 4243.) Taking into account the trial court's assertion that Cassano did not have a right to represent himself, and its stern admonishment that Cassano would never be allowed to even speak in the courtroom, no fairminded jurist could conclude that the statement, "[i]s there any possibility I could represent myself?" was unclear or equivocal. (R. 135-4 at PageID# 4564.) In light of this background, Cassano's inquiry about whether there was "any possibility" that he could represent himself was obviously an attempt to reassert his *Faretta* rights without

incurring the wrath of the trial court that had both denied the existence of the right and declared that no such request would ever be granted.

In short, the statement "[i]s there any possibility I could represent myself?" is so clear and unequivocal that no fairminded jurist could hold that Cassano failed to invoke his *Faretta* rights. But even if the statement alone is not enough to meet the difficult AEDPA standard, the context of Cassano's request undoubtedly establishes the unreasonableness of the Ohio Supreme Court's holding. Cassano made his request directly after asserting that his lead counsel was unprepared for his trial. And he was making his request after the trial court denied the existence of his *Faretta* rights and warned him that no request to represent himself would be granted. Against this backdrop, it was objectively unreasonable for the Ohio Supreme Court to hold that Cassano's request was anything but a clear and unequivocal invocation of his Sixth Amendment right to self-representation. *Cf. Tolliver*, 594 F.3d at 923 (holding that the state court unreasonably held that a defendant failed to invoke his Fifth Amendment right to counsel when it ignored the context of the disputed invocation).

**B. The Ohio Supreme Court's holding that Cassano's "request was untimely because it was made only three days before the trial was to start"**

Turning to the Ohio Supreme Court's second reason for denying Cassano's claim, that his April 23, 1999 statement was untimely, this Court has held that "to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Hill*, 792 F.3d at 678 (citation omitted). Because the April 23, 1999 statement was made three days before trial, at first glance, it appears that the Ohio Supreme Court did not unreasonably apply *Faretta*. However, upon closer examination it becomes clear that the Ohio Supreme Court both "base[d] its decision on an unreasonable determination of the facts" and "unreasonably applie[d] the law." *Lang*, 889 F.3d at 810.

"[W]ith respect to using section (d)(2) [of § 2254] to assess factual determinations made by a state court, AEDPA prescribes that: '[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Wofford*, 969 F.3d at 696

(quoting 28 U.S.C. § 2254(e)(1)).   "Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'"   *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)).   That is, "[d]eference does not by definition preclude relief." *Dretke*, 545 U.S. at 240 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); *see also Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).

The Ohio Supreme Court unreasonably determined that, as a factual matter, "Cassano did not mention that he wanted to represent himself alone until April 23, 1999, only three days before the start of the trial."   *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 37.   If true, the April 23, 1999 invocation might have been untimely.[3]   *See Hill*, 792 F.3d at 678. However, this factual determination was undisputedly wrong.   As detailed at length above, on May 14, 1998, Cassano filed a Waiver of Counsel seeking to represent himself alone.   The Ohio Supreme Court apparently overlooked the Waiver of Counsel when ruling on Cassano's *Faretta* claims.   Therefore, because the Ohio Supreme Court's timeliness holding was based on an unreasonable determination of the facts—that the April 23, 1999 invocation was Cassano's first time mentioning self-representation—this reason for denying Cassano's claim is not entitled to AEDPA deference.

Separately, the Ohio Supreme Court also unreasonably applied the law because it ignored the trial court's contribution to Cassano's purportedly untimely request.   At the September 25, 1998 hearing, the trial court informed Cassano that the law did not require it "to allow [Cassano] to represent himself," that it "would be absolutely improper" to allow him to represent himself, and that he would not be allowed "to represent [him]self in this matter" or even "speak[] in the courtroom." (R. 135-1 at PageID## 4242–43.)   *But see Faretta*, 422 U.S. at 807–836.   After Cassano was forcefully told—incorrectly—that he had no right to represent himself and that

---

[3]Although not a Supreme Court holding, it is worth noting that this Court has held that a defendant's invocation of his *Faretta* rights on the final day of trial was not untimely when the defendant "acted swiftly" once his "grounds for dissatisfaction with counsel's representation arose."   *Moore*, 531 F.3d at 403.   Cassano's April 23, 1999 request was in response to Love's alleged unpreparedness for trial due to his commitments in another capital case.   As Cassano had no issues with Love's representation until Love was unable to devote his attention to the case immediately prior to the April 23, 1999 hearing and the trial set to begin three days later, Cassano also "acted swiftly" even though his request was on the eve of trial.   *Id.*

there was no chance that the trial court would allow him to waive the assistance of counsel, to then hold that he delayed too long in asserting that right is the height of unreasonableness. Put another way, it is unreasonable to hold that a defendant untimely invoked a constitutional right after the defendant was told by the trial court that he did not have the right and that any attempt to request the right would be futile. There can be no "fairminded disagreement" on this point. *Richter*, 562 U.S. at 103. Therefore, the Ohio Supreme Court's timeliness reason is also not entitled to AEDPA deference.

### C. The Ohio Supreme Court's holding that "Cassano made this remark about representing himself as an attempt to delay the trial"

This Court has understood *Faretta* to allow a defendant's right to self-representation to be denied "when the prosecution makes an affirmative showing that the defendant's request for self-representation is merely a tactic to secure a delay in the proceeding." *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986); *see also Powell*, 847 F.3d at 774. Although the trial court did not understand Cassano's request to be a delay tactic, the Ohio Supreme Court concluded otherwise because: 1) Cassano had been "represented for over ten months by the same counsel" and, "[i]n that time, he did not ask that those counsel be discharged so that he could proceed alone and without counsel;" and 2) "Cassano referred to self-representation on April 23 only in the context of supporting his last-minute request for delay." *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 41. However, a review of this delay tactic reason for denying Cassano's claim demonstrates that it is also not entitled to AEDPA deference.

As an initial matter, this holding suffers from the same two fatal flaws as the Ohio Supreme Court's previously discussed timeliness reason for denying Cassano's claim. First, the court's holding was made against the backdrop of its unreasonable factual determination that April 23, 1999 was Cassano's first time seeking to represent himself alone. This background assumption supported the Ohio Supreme Court's conclusion that Cassano's April 23, 1999 request was merely a delay tactic. Therefore, the court's apparent overlooking of Cassano's April 14, 1998 Waiver of Counsel renders its delay tactic reason for denying Cassano's claim unreasonable.

Second, although Cassano never previously moved to discharge Love and Gatterdam, the trial court foreclosed that option. As explained at length above, on September 25, 1998, at the first hearing held after Love and Gatterdam were appointed, the trial court told Cassano that he would not be allowed to represent himself and that he would never even be allowed to speak in the courtroom. At the April 23, 1999 hearing, Cassano recognized that his request for self-representation had already been foreclosed by the trial court. Before the trial court responded to his request, Cassano immediately stated "I'd like that to go on record." (R. 135-4 at PageID# 4564.) And the trial court's response was to refer back to that previous discussion and remind Cassano, "We've talked about it before I think I'd be doing you a disservice by allowing that." (R. 135-4 at PageID# 4564.) Thus, to conclude based on Cassano never having previously requested to discharge Love and Gatterdam that his April 23, 1999 self-representation request was a delay tactic wholly ignores the circumstances of this case and constitutes an unreasonable application of *Faretta*.

Moreover, Cassano's reason for seeking self-representation at the April 23, 1999 hearing did not exist over the entire course of Love and Gatterdam's representation. Cassano moved for self-representation on April 23, 1999 because he felt that Love had been unable to appropriately prepare for his trial due to Love's involvement in another capital case. *See Powell*, 847 F.3d at 776 (explaining that "dissatisfaction" with counsel is a legitimate, non-dilatory, reason to seek self-representation). Gatterdam then explained that, due to this other capital trial, Love had "not looked at anything on the Cassano matter since some time in February of 1999," and that the State had since "provided us a great deal of information which Mr. Love has gotten none of, of course, because he's been busy with that trial." (R. 135-4 at PageID# 4564.) Therefore, Cassano's reason for wanting to represent himself on April 23, 1999 did not exist for most of the ten month period during which the Ohio Supreme Court faults him for not moving to represent himself. Only as trial approached, and Cassano learned about Love's lack of preparedness and the "great deal of information" provided by the State while Love was otherwise engaged, did Cassano's reason for seeking self-representation arise.[4] (*Id.*) Accordingly, no fairminded jurist

---

[4]Although the trial court asserted that Love's involvement in the other capital trial was not an issue because he was not set to conduct *voir dire* in Cassano's case and, according to the trial court, that would be enough time for

could rely on Cassano's failure to previously move to discharge Love and Gatterdam to conclude that his April 23, 1999 request was merely a delay tactic.

Furthermore, Cassano did not ask for the trial to be delayed in conjunction with his request. Cassano initially stated, "I would like my lead counsel to be here and be prepared when my trial starts," which could be construed as a request for a delay. (*Id.* at PageID# 4563.) But after the trial court stated that it believed that Love would have enough time to prepare for the trial during *voir dire*, Cassano, who obviously disagreed, simply asked, "Is there any possibility I could represent myself? I'd like that to go on record." (*Id.* at PageID# 4564.) That is, upon learning that his lead counsel, who he believed was unprepared for trial, would not be given time to prepare, Cassano merely asked to take over the representation. Because Cassano did not request that the trial be delayed, it was unreasonable for the Ohio Supreme Court to conjure this hidden agenda.

Additionally, even if Cassano had sought to delay the trial, it still would have been unreasonable for the Ohio Supreme Court to conclude, without any support, that Cassano's self-representation request was a thinly veiled "attempt to delay the trial" rather than an earnest attempt to exercise his Sixth Amendment rights. *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 41. While a defendant cannot invoke their *Faretta* rights merely as a delay tactic, requesting a delay to prepare for trial does not alone mean that the invocation was a delay tactic. *See Farias*, 618 F.3d at 1053–54 ("A criminal defendant does not simply have the right to represent himself, but rather has the right to represent himself meaningfully. Meaningful representation requires time to prepare."); *see also Powell v. Alabama*, 287 U.S. 45, 59 (1932) ("It is vain to give the accused a day in court, with no opportunity to prepare for it . . . ." (citation omitted)).

As explained above, Cassano asserted that Love's other capital trial engagement in the two months leading up to his trial meant that Love was unprepared for trial. Gatterdam, Love's co-counsel with the Ohio Public Defender, backed up Cassano's assertion. Thus, Cassano's initial apparent request for a delay only indicated a reasonable and legitimate desire for his lead

---

Love to prepare for Cassano's capital trial, the record shows that Love examined at least two of Cassano's witnesses after first meeting them only moments before they took the stand.

counsel to have enough time to prepare for his capital trial—a literal life-or-death situation. When the trial court denied this request, Cassano asked to represent himself. Although the record does not show that Cassano asked to delay trial in conjunction with this request, even if he had, a desire to delay trial to allow him time to prepare for his self-representation would not support a conclusion that his request for self-representation was a delay *tactic*. Rather, it would show that when Cassano realized that Love's other trial was lasting so long that Love's only chance to prepare for his trial would be during *voir dire*, he decided that he wanted to represent himself, and because this event occurred so close to his trial date, he concluded that he needed some time to prepare. Therefore, because Cassano did not ask for more time to prepare his own defense, and, in any event, the record demonstrates that he was seeking to represent himself specifically because he learned that the lead counsel in his capital case was unprepared for trial, there was simply no basis for the Ohio Supreme Court to conclude that his request was merely a delay tactic.

In sum, no fairminded jurist could conclude that Cassano's April 23, 1999 request was merely a delay tactic as opposed to a legitimate request to represent himself. As far back as May 14, 1998, he had sought to represent himself. After being incorrectly told by the trial court that he did not have a right to represent himself and that no such request would be granted, Cassano did not reinvoke this right until he learned that his lead counsel was unprepared for trial. At that point, Cassano asked the trial court whether he could represent himself. Even had he asked for a delay in conjunction with that request it would not have rendered the self-representation request a delay *tactic*. But, in fact, Cassano did not ask for a delay along with his self-representation request. Accordingly, it was objectively unreasonable for the trial court to treat Cassano's request as anything but a legitimate invocation of his *Faretta* rights.

**D. The Ohio Supreme Court's holding that "Cassano abandoned any intention to represent himself when he did not pursue the issue of self-representation after the court told him it would not be a good idea"**

Finally, like the district court asserted in the context of Cassano's May 14, 1998 Waiver of Counsel, the Ohio Supreme Court relied on *McKaskle* for the proposition that "Cassano abandoned any intention to represent himself when he did not pursue the issue of self-representation after the court told him it would not be a good idea." *Cassano*, 96 Ohio St.3d

94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 42 (citing *McKaskle*, 465 U.S. at 182). But, as explained above, *McKaskle* says no such thing:

> *McKaskle* addresses the constitutional boundaries of standby counsel's involvement in criminal proceedings against the wishes of a *pro se* defendant. [Cassano] never became a *pro se* defendant, nor was his attorney standby counsel. [Cassano] does not complain that his attorney overstepped his bounds as standby counsel—rather he complains that he was denied his right of self-representation.

*Moore*, 531 F.3d at 403; *see also Faretta*, 422 U.S. at 835 (holding that a defendant's right to self-representation was denied when he made his requests "weeks before trial" without any indication that the defendant was required to reassert his request during the trial). Therefore, "[f]or the state appellate court to read *McKaskle* to find a waiver of [Cassano's] right to self-representation was an objectively unreasonable application of that decision." *Id.* Accordingly, this final reason for denying Cassano's claim is also not entitled to AEDPA deference.

As the foregoing discussion makes clear, none of the Ohio Supreme Court's reasons for holding that Cassano's April 23, 1999 statement did not properly invoke his constitutional right to conduct his own defense at trial are entitled to AEDPA deference. And when viewed in context, "Is there any possibility I could represent myself?" was a clear and unequivocal reinvocation of Cassano's Sixth Amendment right to represent himself. (R. 135-4 at PageID# 4564.). Therefore, in addition to granting Cassano's petition based on the trial court's denial of his May 14, 1998 Waiver of Counsel, Cassano's conviction also cannot stand due to the trial court's denial of his April 23, 1999 invocation of his Sixth Amendment right to self-representation.[5]

## CONCLUSION

For these reasons, we **REVERSE** the judgment of the district court and **CONDITIONALLY GRANT** Cassano's petition for a writ of habeas corpus, unless the State retries him within six months.

---

[5]Because we grant Cassano's petition on the grounds that his Sixth Amendment right to self-representation was violated, we do not address the other claims raised in his petition.

———————————

**DISSENT**

———————————

SILER, Circuit Judge, dissenting.  I respectfully dissent from the majority opinion, reversing the judgment of the district court and granting the habeas corpus petition under the authority of *Faretta v. California*, 422 U.S. 806 (1975).  Because the majority opinion did not discuss the other issues raised by the petitioner, this dissent will also not discuss those issues.  I would uphold the judgment of the district court in denying the writ.  I base my dissent primarily upon the decision in *Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (per curiam).  Although the decision in *Shinn* was not based upon *Faretta*, it was a habeas corpus case under 28 U.S.C. § 2254(d).  As the Supreme Court stated,

> When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies "beyond any possibility for fairminded disagreement."

*Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Thus, to issue the writ, this court must find that the Ohio Supreme Court erred "beyond any possibility for fairminded disagreement." *Id*.

I agree with the majority that the trial court never conducted a *Faretta*-compliant hearing.  However, unless Cassano "clearly, unequivocally," and "timely" invoked his constitutional right to conduct his own defense, the trial court did not have to conduct the hearing.  *United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017).  No clearly established Supreme Court precedent required it.  *See United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004).  As described by the majority, there were three occasions that Cassano claims he invoked his constitutional right under *Faretta*.  Those are May 14, 1998, September 25, 1998, and April 23, 1999.  On May 14, Cassano filed two pro se motions, a waiver of counsel and a motion for appointment of substitute counsel.  They were filed within a minute of each other.  The majority concludes that the Ohio Supreme Court overlooked the May 14 waiver of counsel when ruling on the *Faretta* claims so, therefore, AEDPA deference does not apply.  However, the Ohio Supreme Court did mention this waiver of counsel, *State v. Cassano*, 772 N.E.2d 81, 90 (Ohio 2002).  It denied the claim

later in its opinion. *Id.* Thus, the court must have determined that this was not an effective waiver. *See Woodford v. Visciotto*, 537 U.S. 19, 24 (2002) (per curiam) (AEDPA "demands that state-court decisions be given the benefit of the doubt"). As the requests were contradictory, the waiver of counsel on the first date was not a clear and unequivocal indication of Cassano's right to self-representation and was thus forfeited.

The majority here indicates that the Ohio Supreme Court incorrectly referred to the September motion as the "only written motion," and his statements in the April hearing were the only time that Cassano mentioned he wanted to represent himself. But the court did not need to again mention the first attempt in May 1998, because it did not count, due to the fact that the request was not clear and unequivocal. Therefore, I respectfully dissent from the majority conclusion that AEDPA deference does not apply to the claim invoked in May. Because AEDPA deference does apply to the claim in May, I would uphold the determination by the Ohio Supreme Court that Cassano did not unequivocally and explicitly invoke his right to self-representation at the May court appearance. The contradictory motions filed on that occasion support that finding.

On the next appearance before the trial court, in September, the majority agrees that Cassano was requesting hybrid representation. Therefore, the Ohio Supreme Court's conclusion that Cassano failed to invoke his right under *Faretta* was correct.

On the third appearance in court, April 23, 1999, as the majority indicates, we review only the Ohio Supreme Court's reasons for denying the claim. The majority suggests that Cassano's question, "Is there any possibility I could represent myself?", was made at a time when one of his counsel was engaged in another death penalty case about to conclude, but he had two other attorneys with him who declared themselves ready for trial. The Ohio Supreme Court held that Cassano again had not been denied his right to self-representation, for three reasons: (1) this "was not an explicit and unequivocal demand for self-representation"; (2) the "request was untimely" and an "attempt to delay the trial"; and (3) he abandoned his intent to represent himself "after the trial court told him it would not be a good idea." *See Cassano*, 772 N.E.2d at 91-92. Therefore, unless we can find that the Ohio Supreme Court's decision was "beyond any

possibility for fairminded disagreement," *Shinn*, 141 S. Ct. at 520 (citations omitted), we should deny the petition on this ground.

The Ohio Supreme Court applied "the correct governing legal principle . . . to the facts of the prisoner's case," *id*. at 523 (quoting *Lockyear v. Andrade*, 538 U.S. 63, 75 (2003)).  Cassano "must show far more than that the Ohio Supreme Court's decision was 'merely wrong' or 'even clear error.'"  *Id*. at 523 (citing *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017)).

Therefore, I would deny the writ on the *Faretta* issue and affirm the district court.