RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

AUGUST CASSANO,

           *Petitioner-Appellant*,

*v.*

TIM SHOOP, Warden,

           *Respondent-Appellee*.

No. 18-3761

On Petition for Rehearing En Banc.

United States District Court for the Northern District of Ohio at Cleveland.
No. 1:03-cv-01206—John R. Adams, District Judge.

Decided and Filed: August 26, 2021

Before: SILER, CLAY, and DONALD, Circuit Judges.

─────────────────

**COUNSEL**

**ON PETITION FOR REHEARING EN BANC:** Charles L. Wille, Benjamin M. Flowers, Zachery P. Keller, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON RESPONSE:** Adam M. Rusnak, Erin G. Barnhart, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellant.

     The panel issued an order denying the petition for rehearing en banc. GRIFFIN, J. (pp. 3–7) and THAPAR, J. (pp. 8–15), in which NALBANDIAN, J. joined, delivered separate opinions dissenting from the denial of the petition for rehearing en banc.

———————————

**ORDER**

———————————

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision. The petition then was circulated to the full court. Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied. Judge Siler would grant rehearing for the reasons stated in his dissent.

——————————

**DISSENT**

——————————

GRIFFIN, Circuit Judge, dissenting.

Once again, our court has shirked its responsibility to correct a decision of exceptional importance meriting en banc review. Instead, the majority has chosen reversal over duty. Unfortunately, this path is all too familiar. *See, e.g.*, *Davenport v. MacLaren*, 975 F.3d 537 (6th Cir. 2020) (denying petition for rehearing en banc), *cert. granted sub nom.*, *Brown v. Davenport*, 141 S. Ct. 2465 (2021); *see also CNH Industrial N.V. v. Reese*, 138 S. Ct. 761, 765 n.2 (2018).

Because we "have acquired a taste for disregarding" the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), *Rapelje v. Blackston*, 136 S. Ct. 388, 389 (2015) (Scalia, J., dissenting from denial of petition for writ of certiorari), the Supreme Court has reversed us twenty-two times for not applying the deference to state-court decisions mandated by AEDPA. *See Mays v. Hines*, 141 S. Ct. 1145, 1149–50 (2021); *Shoop v. Hill*, 139 S. Ct. 504, 507–09 (2019); *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016); *White v. Wheeler*, 577 U.S. 73, 79 (2015); *Woods v. Donald*, 575 U.S. 312, 317–19 (2015); *White v. Woodall*, 572 U.S. 415, 427 (2014); *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013); *Metrish v. Lancaster*, 569 U.S. 351, 365–68 (2013); *Parker v. Matthews*, 567 U.S. 37, 38 (2012); *Howes v. Fields*, 565 U.S. 499, 505–08 (2012); *Bobby v. Dixon*, 565 U.S. 23, 24 (2011); *Bobby v. Mitts*, 563 U.S. 395, 399–400 (2011); *Berghuis v. Thompkins*, 560 U.S. 370, 380–91 (2010); *Renico v. Lett*, 559 U.S. 766, 776–79 (2010); *Berghuis v. Smith*, 559 U.S. 314, 332–33 (2010); *Smith v. Spisak*, 558 U.S. 139, 148–56 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 78 (2005); *Bell v. Cone*, 543 U.S. 447, 455–60 (2005); *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004); *Mitchell v. Esparza*, 540 U.S. 12, 17–19 (2003); *Price v. Vincent*, 538 U.S. 634, 638–43 (2003); *Bell v. Cone*, 535 U.S. 685, 693–702 (2002).

Of those twenty-two rebukes, twelve of our reversals by the Supreme Court were by per curiam decisions on petitions for writs of certiorari. *See Mays*, 141 S. Ct. at 1145; *Shoop*, 139 S. Ct. at 504; *Etherton*, 136 S. Ct. at 1149; *Wheeler*, 577 U.S. at 73; *Woods*, 575 U.S. at 312;

*Parker*, 567 U.S. at 38; *Dixon*, 565 U.S. at 24; *Mitts*, 563 U.S. at 399–400; *Bradshaw*, 546 U.S. at 73; *Bell*, 543 U.S. at 447; *Holland*, 542 U.S. at 649; *Mitchell*, 540 U.S. at 12. This is a sad record.

The Federal Rules of Appellate Procedure provide an important and necessary remedy for courts of appeals to correct their conflicts and errors of exceptional importance. While en banc hearings or rehearings are not favored, they are authorized when:

(1)     en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or

(2)     the proceeding involves a question of exceptional importance.

Fed. R. App. P. 35(a).

The majority appears to recognize that the precedentially binding panel decision at issue is clearly incorrect. Nevertheless, it allows it to stand because it concludes that this case is not of exceptional importance. I strongly disagree.

First, this is a death penalty case in which our court conditionally granted a repeat convicted murderer's petition for a writ of habeas corpus, unless the State of Ohio retries him within six months.

Second, the Supreme Court has specifically "advise[d]" this court time and time again "that the provisions of AEDPA apply with full force even when reviewing a conviction and sentence imposing the death penalty." *Wheeler*, 577 U.S. at 81. Yet, the panel majority refused to afford the Ohio Supreme Court decision the deference the law requires. AEDPA commands our federal courts to leave state court decisions undisturbed "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Here, the panel opinion improperly "treated the unreasonableness question as a test of its confidence in the result it would [have] reach[ed] under de novo review." *Id.* (emphasis omitted).

Consider Cassano's May 14, 1998 waiver-of-counsel motion. Clearly established law as determined by the Supreme Court requires that a request for self-representation be clear and

unequivocal. *Faretta v. California*, 422 U.S. 806, 835 (1975). But here, the potential invocation of the right to self-representation was unclear and equivocal because Cassano signed a substitution-of-counsel motion the same day, the state trial court received both motions at nearly the same time, and neither motion referenced the other. Fairminded jurists could disagree on whether Cassano's simultaneous request for a different attorney meant that his motion to represent himself was not a "clear[] and unequivocal[] declar[ation] to the trial judge that he wanted to represent himself and did not want counsel." *Id.*

Moreover, the panel's holding that AEDPA did not apply to Cassano's May 14, 1998 *Faretta* claim conflicts with *Johnson v. Williams*, 568 U.S. 289 (2013). "When a state court rejects a federal claim without expressly addressing that claim," we nevertheless "must presume that the federal claim was adjudicated on the merits." *Johnson*, 568 U.S. at 301. When, however, "evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," a petitioner can overcome that presumption and secure "an unencumbered opportunity to" have a federal court review his claim de novo. *Id.* at 303. The panel majority concluded that Cassano overcame the presumption because—in its view—the Ohio State Supreme Court "inadvertently overlooked" his waiver-of-counsel motion. The evidence of an inadvertent overlook, however, was not "very clear." The majority opinion reasoned that because the Ohio Supreme Court did not characterize or analyze the 1998 waiver-of-counsel motion as a potential invocation of his right to self-representation, the state court must have inadvertently overlooked the claim. The state court, however, acknowledged the motion and again, the panel majority opinion's analysis does not rule out a plausible alternative explanation: the state court "simply regard[ed] [the] claim as too insubstantial to merit discussion." *Id.* at 299. With no "very clear" evidence to counter that plausible alternative explanation, the panel majority ran afoul of *Johnson* and its directive for how to determine when a petitioner has rebutted the presumption that the state court adjudicated a federal claim on the merits.

Cassano's other relevant *Faretta* claim centers on a question he posed at the April 23, 1999 pretrial hearing—three days before the trial was set to begin—where he asked, "Is there any possibility I could represent myself?" Although the Ohio Supreme Court held "that

Cassano's request was untimely because it was made only three days before the trial was to start," *State v. Cassano*, 772 N.E.2d 81, 91 (Ohio 2002), the panel majority held "that the Ohio Supreme Court both 'base[d] its decision on an unreasonable determination of the facts' and 'unreasonably applie[d] the law.'" *Cassano v. Shoop*, 1 F.4th 458, 474 (6th Cir. 2021) (citation omitted).  Both of the panel majority's rulings failed to apply the deference required by AEDPA. *See generally Hill v. Curtin*, 792 F.3d 670, 677–79 (6th Cir. 2015) (en banc).

The panel opinion also held that given the question's words and context, "it was objectively unreasonable for the Ohio Supreme Court to hold that Cassano's request was anything but a clear and unequivocal invocation of his Sixth Amendment right to self-representation."  This is a prime example of our court shortchanging AEDPA by not affording deference to the state-court decision.  Something is "equivocal" when it has "more than one meaning or sense" or is "ambiguous."  *Equivocal*, *Black's Law Dictionary* (11th ed. 2019). Here, Cassano's question can bear at least two different meanings.  Cassano's question can mean, "I would like to represent myself."  But it can also be a contingent question inquiring whether self-representation is even an option for the future.  Those two meanings are not interchangeable, and the majority's perspective that the first meaning is more likely than the second one is not enough to place the state court's decision "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Third, the issues of when and how the right of self-representation may be invoked are of exceptional importance.  As the Tenth Circuit has said:  "Determining what a defendant has elected to do regarding representation is a recurring dilemma for the courts." *See United States v. Miles*, 572 F.3d 832, 836 (10th Cir. 2009).  *Faretta* claims repeatedly arise in our circuit. *See, e.g.*, *United States v. Tucci-Jarraf*, 939 F.3d 790, 793–97 (6th Cir. 2019); *United States v. Powell*, 847 F.3d 760, 774–77 (6th Cir. 2017); *Pouncy v. Palmer*, 846 F.3d 144, 158–63 (6th Cir. 2017); *United States v. Pryor*, 842 F.3d 441, 448–49 (6th Cir. 2016); *Jones v. Bell*, 801 F.3d 556, 564–67 (6th Cir. 2015).  Moreover, just six years ago, we issued an en banc decision that addressed a *Faretta* claim that arose in the habeas context.  *Curtin*, 792 F.3d at 677–79.  In that case, we corrected a panel decision that failed to give the deference to a state-court decision that AEDPA requires. *Id.*  The panel decision at issue here, however, creates loopholes in our law

that will swallow the rule that requires requests for self-representation to be both timely and unequivocal. *See Faretta*, 422 U.S. at 835; *Curtin*, 792 F.3d at 677–79 (citing *Martinez v. Ct. of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 162 (2000)).

For these reasons, and for those articulated by Judge Siler in his persuasive panel dissent, I respectfully dissent from the denial of the petition for rehearing en banc.

---

**DISSENT**

---

THAPAR, Circuit Judge, dissenting from the denial of rehearing en banc. If a criminal defendant wants to represent himself, he must make a clear and unequivocal demand to do so. This is a high standard to meet because "a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney." *Martinez v. Ct. of Appeal*, 528 U.S. 152, 161 (2000) (citation omitted). Filing a motion to represent yourself on the same day you file a motion asking for specific counsel doesn't count. Nor does asking a question about it on the eve of trial. The panel here erred in concluding otherwise. And that would be true under any standard of review. But it is especially true on habeas review.

We should have corrected these errors. I write separately to explain why.

I.

In 1976, August Cassano was convicted of aggravated murder. *See State v. Cassano*, 96 Ohio St. 3d 94, 94 (2002). He received a sentence of life imprisonment. While serving that sentence, Cassano has remained no stranger to violence. According to Cassano's own testimony from 1999, "he had been in over one hundred fights in prison and had stabbed four people." *Id.* at 100–01.

On one gruesome occasion, Cassano attacked a fellow inmate, Troy Angelo. Cassano "tied a shank to his hand" and "stabbed Angelo approximately thirty-two times in the face, neck, chest, back, arms, head, and hand." *Id.* at 94. As Angelo was being carried away, Cassano looked at him and said, "I hope you die." *Id.*

By 1997, Cassano was being held at the Mansfield Correctional Institution. That October, the prison assigned inmate Walter Hardy to Cassano's cell. This enraged Cassano. He told an official that he "didn't want that snitching a-- fa---- in his cell" and that they "better check [Cassano's] record." *Id.* at 95. And when one inmate observed that Cassano had a new

cellmate, Cassano replied, "Not for long." *Id.* Cassano later warned that if the prison didn't remove Hardy from the cell, he would "remove him himself." *Id.*

Cassano kept his word. In the early morning hours of October 21, Officer Donald Oats heard a "commotion" in Cassano and Hardy's cell. *Id.* He raced over. Looking inside, Oats saw the pair fighting. He sounded the prison's "man down" alarm and hurried to find help. *Id.* When he returned, Cassano "was standing over Hardy and stabbing him with a shank." *Id.* Hardy pleaded for help. But Cassano defied Oats's repeated orders to stop. He stabbed Hardy again and again, pausing only to glance at Oats before going "right back to sticking" Hardy. *Id.*

Reinforcements arrived in less than a minute. Oats opened the cell door and ordered Cassano to step away from Hardy. Cassano finally complied; Hardy was pulled out of the cell and rushed to the hospital. He was pronounced dead an hour later. A pathologist who examined Hardy's body counted "approximately seventy-five knife wounds." *Id.* at 96. That included "eight wounds to the head, nine to the neck, twenty-four to the back, fifteen to the chest, and various other wounds to the abdomen, hips, legs, arms, and hands." *Id.*

A jury convicted Cassano of aggravated murder. It recommended a death sentence, and the trial court imposed one. Cassano then appealed to the Ohio Supreme Court, raising fourteen separate claims. It affirmed. And the United States Supreme Court denied certiorari. *See Cassano v. Ohio*, 537 U.S. 1235 (2003) (mem.).

Cassano next sought postconviction relief. After his efforts in state court failed, Cassano turned to the federal courts. A district court denied his habeas petition, but he received a certificate of appealability on numerous claims, including whether the trial court erred by refusing to allow Cassano to represent himself in violation of *Faretta v. California*. 422 U.S. 806 (1975).

On appeal, a divided panel of this court held—over Judge Siler's dissent—that Cassano is "entitled to relief" because he twice "properly invoked his constitutional right to self-

representation." *Cassano v. Shoop*, 1 F.4th 458, 467 (6th Cir. 2021).[1] On the first occasion, Cassano filed two conflicting motions—a waiver of counsel and a motion for appointment of substitute counsel. R. 134-1, Pg. ID 863–71. And on the second, he asked the trial court whether there was "any possibility I could represent myself?" R. 135-4, Pg. ID 4564. In granting Cassano's petition on these grounds, however, the panel disregarded federal law, spurned Supreme Court precedent, and trampled on Ohio's state courts. The result? This court erroneously gave postconviction relief to a repeat murderer.

## II.

The panel's decision to grant federal habeas relief based on *Faretta* is a mistake.

In *Faretta*, the Supreme Court held that a defendant has the constitutional right to represent himself. 422 U.S. at 835–36. But the defendant's demand for self-representation must be "clear[] and unequivocal[]." *Id.* at 835. And most courts require that the defendant make that demand in a "timely manner." *Martinez*, 528 U.S. at 162.

We generally review federal habeas claims related to state convictions, including *Faretta* claims, under the Antiterrorism and Effective Death Penalty Act (AEDPA). And AEDPA bars federal courts from granting habeas relief unless a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). If "fairminded jurists could disagree on the correctness of the state court's decision" that a claim "lacks merit," the decision was reasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted and cleaned up). And federal courts cannot grant habeas relief. *Id.*

"If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. By requiring that federal courts give deference to state courts, AEDPA furthers "principles of

---

[1]The panel correctly held that Cassano's September 1998 motion for "hybrid representation" does not trigger *Faretta* as "there is no constitutional right to hybrid representation." *Cassano*, 1 F.4th at 467 (quoting *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004)). For that reason, I do not address this claim here.

comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (citation omitted); *see also Burt v. Titlow*, 571 U.S. 12, 18–19 (2013).  After all, federal habeas review of state convictions is one of the federal judiciary's most intrusive exercises of power over state courts.  *Harrington*, 562 U.S. at 103.  It "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."  *Id.* (citation omitted). AEDPA's deferential standard therefore guards "against *extreme malfunctions* in the state criminal justice systems," but ensures that federal habeas review is "not a substitute for ordinary error correction."  *Id.* at 102–03 (citation omitted) (emphasis added).

## III.

With the relevant legal standard in mind, it is clear that the panel here erred.  But under *any* standard of review, the panel should not have granted Cassano's habeas petition.

## A.

Start with the conflicting motions that Cassano filed on May 14, 1998.  One stated that Cassano "would rather control the organization and content of his defense" and waived his right to counsel.  R. 134-1, Pg. ID 863.  But the other requested that the trial court appoint a specific public defender, Kort Gatterdam, as his counsel.  R. 134-1, Pg. ID 864.  Cassano filed these motions on the same day.  And neither motion referenced the other.  *See Cassano*, 1 F.4th at 470.

There is nothing "clear[] and unequivocal[]" about Cassano's two conflicting filings. *Faretta*, 422 U.S. at 835.  A request is unequivocal if it's "free from uncertainty."  *Unequivocal*, BLACK'S LAW DICTIONARY (11th ed. 2019).  When, as here, a defendant simultaneously files two conflicting motions that don't reference each other, things are anything but clear and certain. That is true no matter what standard of review we apply.

But we're not free to choose any standard of review.  Instead, we're instructed to apply AEDPA's deferential standard.  And under AEDPA, this is an easy case.  Why?  Because AEDPA simply requires us to ask whether "fairminded jurists could disagree."  *Harrington*, 562 U.S. at 101 (citation omitted).  And, for the reasons explained above, fairminded jurists could certainly conclude that Cassano's conflicting motions were not a clear and unequivocal

demand for self-representation. *See Martinez*, 538 U.S. at 161 (highlighting the "strong presumption against" waivers of counsel (quoting *Patterson v. Illinois*, 487 U.S. 285, 307 (1988))).

So how did the panel reach a different answer? It began by refusing to give the Ohio Supreme Court the deference it's due under AEDPA. Instead, the panel found that the Ohio Supreme Court "inadvertently overlooked" the request Cassano made in his conflicting motions. *Cassano*, 1 F.4th at 468. So it reviewed the motions de novo and concluded that they amounted to a "clear[] and unequivocal[]" demand for self-representation. *Id.* at 470. Again, even on de novo review, that conclusion is puzzling—two conflicting statements are not clear, let alone unequivocal. But AEDPA deference applies.

To be sure, AEDPA deference is not always appropriate. It only covers claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Thus, if a claim was "inadvertently overlooked in state court," a state prisoner may be entitled to "an unencumbered opportunity to make his case before a federal judge." *Johnson v. Williams*, 568 U.S. 289, 303 (2013). But those circumstances are "rare." *Id.*

The Supreme Court has told us to apply a "strong" presumption that a federal claim was adjudicated on the merits in state court. *Id.* at 301–02; *see also Harrington*, 562 U.S. at 99. Under that presumption, we must assume that the court adjudicated a defendant's claims on the merits even if the state court's decision "did not address *any* of the defendant's claims." *Johnson*, 568 U.S. at 298. And we must make that same assumption if the state court's decision "addresses some but not all of a defendant's claims." *Id.* After all, "there are instances in which a state court may simply regard a claim as too insubstantial to merit discussion." *Id.* at 299. This presumption is overcome only when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." *Id.* at 303; *see Harrington*, 562 U.S. at 99 (explaining that the presumption may be overcome when "state-law procedural principles" suggest that the state court did not adjudicate the claim on the merits).

The evidence here falls far short of that mark. The Ohio Supreme Court dedicated an entire section of its opinion—a full twelve paragraphs—to Cassano's *Faretta* arguments.

*See Cassano*, 96 Ohio St. 3d at 98–100. The court described all the relevant facts, including that Cassano filed two conflicting motions on the same day. *Id.* at 99. Although the Ohio Supreme Court did not mention these motions again, it did conclude that "Cassano did not unequivocally and explicitly invoke his right to self-representation." *Id.* at 100. The inference is obvious: The Ohio Supreme Court didn't consider those conflicting filings to be a clear and unequivocal demand for self-representation.

But even if any uncertainty remains—and it doesn't—we would have to apply the strong presumption that the court adjudicated the claim on the merits. And nothing in the Ohio Supreme Court's opinion "very clearly" leads "to the conclusion that a federal claim was inadvertently overlooked in state court."[2] *Johnson*, 568 U.S. at 303. Instead, the opinion indicates the opposite.

## B.

The panel's analysis of Cassano's second *Faretta* argument is equally unsound. On April 23, 1999, just three days before his trial was set to begin, Cassano asked the trial court whether there was "any possibility I could represent myself?" R. 135-4, Pg. ID 4564.

On direct appeal, the Ohio Supreme Court concluded that Cassano's tepid question "was not an explicit and unequivocal demand for self-representation." *Cassano*, 96 Ohio St. 3d at 100. The court also explained that his "request was untimely because it was made three days before the trial was to start"; that he "made this remark about representing himself as an attempt to delay the trial"; and that he "abandoned any intention to represent himself when he did not pursue the issue of self-representation after the court told him it would not be a good idea." *Id.*

---

[2]In a footnote, the panel concluded that, even if the Ohio Supreme Court didn't overlook this claim, because the court "did not provide its reason for denying the claim," the panel would "look through the unexplained decision to the last related state-court decision that does provide a relevant rationale." *See Cassano*, 1 F.4th at 470 n.2 (citation omitted and cleaned up). The panel therefore looked at comments the trial court made when denying Cassano's September 1998 request for hybrid representation to conclude that the trial court must have relied on impermissible reasons when denying his April 1999 request on a different issue. *Id.* This is plainly incorrect. When we "look through" an unexplained decision, we are told to look for the last related state-court decision with "a *relevant* rationale"—not to use reasoning from an unrelated issue to piece together our own theory for why the trial court ruled the way it did. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added).

Unlike with the conflicting motions, the panel purported to analyze this part of Cassano's challenge under AEDPA. But it failed to adhere to AEDPA's deferential standard. Instead, the panel "treated the unreasonableness question as a test of its confidence in the result it would [have] reach[ed] under *de novo* review." *Harrington*, 562 U.S. at 102. The panel asserted that "no fairminded jurist could conclude" that Cassano's question was "equivocal." *Cassano*, 1 F.4th at 473. Yet it offered little more than simple disagreement with the Ohio Supreme Court's decision. The panel relied on "context" to reach what it thought was the better reading of Cassano's question. *Id.* But "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 F.3d at 102. Indeed, the state court here reasonably concluded that Cassano's tepid question—which was not pursued further—was not a clear and unequivocal demand for self-representation. *See Cassano*, 96 Ohio St. 3d at 100. Questions are not demands.

Yet even assuming Cassano's question could be read as a clear and unequivocal demand for self-representation, his claim would still fail. The first time he would have clearly and unequivocally made his request would have been "only three days before the trial was to start."[3] *Id.* The Ohio Supreme Court had every right to uphold the denial of that request as untimely. *See Martinez*, 528 U.S. at 162 ("most courts require [defendants] to [assert their *Faretta* rights] in a timely manner"). After all, nothing in *Faretta* clearly establishes that the trial court needed to permit Cassano to represent himself at that time. As we have explained before, "[*Faretta*] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*." *Hill v. Curtin*, 792 F.3d 670, 678 (6th Cir. 2015) (en banc) (emphasis added); *see also Faretta*, 422 U.S. at 835 (defendant requested self-representation "weeks before trial").

But Cassano's purported request came only *three days* before the start of his trial. So the Ohio Supreme Court's rejection of this argument is well within the bounds of reason. *See Hill*, 792 F.3d at 679 ("Given the general standard articulated in *Faretta*, 'a state court has even more

---

[3]The panel concluded that this was not the first time Cassano raised the issue of self-representation, hanging its hat on its erroneous reading of the conflicting motions from May 1998. But, again, those motions were not a clear and unequivocal demand for self-representation.

latitude to reasonably determine that a defendant has not satisfied that standard.'" (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))).  After all, a state court's decision can't be "contrary to" federal law for purposes of AEDPA review if the Supreme Court has never issued a holding that confronts "the specific question presented by [the] case."  *Lopez v. Smith*, 574 U.S. 1, 6 (2014).  And tellingly, the panel decision can cite no case where the Court granted a defendant's *Faretta* request that came only days before trial.

\*     \*     \*

Taken together, the panel's decision "illustrates a lack of deference to the state court's determination and an improper intervention in state criminal processes."  *Harrington*, 562 U.S. at 104.  Our court has been corrected for similar errors before.  *See, e.g.*, *Mays v. Hines*, 141 S. Ct. 1145 (2021).  Unfortunately, we need to be reminded once again.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk