# SUPREME COURT OF THE UNITED STATES

## TIM SHOOP, WARDEN *v.* AUGUST CASSANO

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 21–679.   Decided June 21, 2022

The motion of respondent for leave to proceed *in forma pauperis* is granted.  The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from denial of certiorari.

In 1997, respondent August Cassano was serving a life sentence in Ohio for aggravated murder.  The prison assigned Cassano a new cellmate, Walter Hardy.  A few days later, Cassano murdered Hardy by stabbing him 75 times with a prison shank.  An Ohio jury convicted Cassano of capital murder, and the trial court sentenced him to death. Yet, more than 20 years later, the Sixth Circuit granted Cassano habeas relief because it thought that the state trial court had ignored Cassano when he purportedly invoked his right to represent himself at trial.  In doing so, the Sixth Circuit failed to treat the state-court adjudication of Cassano's self-representation claim with the deference demanded by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

To correct this manifest error, I would grant Ohio's petition and summarily reverse the Sixth Circuit.  Therefore, I respectfully dissent from denial of certiorari.

I

Cassano is no stranger to violence.  In 1976, he and an accomplice shot bartender Donald Pinto through the heart during a heist in Akron, Ohio.  An Ohio jury convicted Cassano of aggravated murder and robbery, and he received a life sentence.  *State* v. *Cassano*, 1976 WL 188932, *1–*2

(Ohio App., Nov. 10, 1976). Over his first 21 years in custody, Cassano participated in over 100 fights and stabbed four people. Once, he stabbed a fellow inmate approximately 32 times before the victim escaped. *State* v. *Cassano*, 96 Ohio St. 3d 94, 98, 2002-Ohio-3751, ¶¶3, 25, 772 N. E. 2d 81, 87, 89.

In 1997, prison officials assigned Walter Hardy to be Cassano's cellmate. That decision angered Cassano, who said he "'didn't want that snitching ass faggot in his cell.'" *Id.,* at 95, 772 N. E. 2d, at 87. Cassano told other inmates that if Hardy was not removed, he would "'remove [Hardy] himself.'" *Ibid.* It was no bluff. A few days later, a corrections officer responded to a scuffle in the cell. He found Cassano standing over Hardy and stabbing him with a shank. Hardy pleaded for help, yelling, "'he's killing me, he's stabbing me.'" *Ibid.,* 772 N. E. 2d, at 88. As the officer waited for backup, he ordered Cassano to stop. *Ibid.* But Cassano kept stabbing Hardy until backup arrived and the officers entered the cell. Hardy later succumbed to the roughly 75 stab wounds Cassano inflicted on his head, neck, back, and chest. *Id.,* at 96, 772 N. E. 2d, at 88. A nurse checked Cassano for injuries. *Ibid.* His only complaint was that his shoulder was tired. *Ibid.*

State prosecutors charged Cassano with capital murder in March 1998, and the state trial court appointed him defense counsel. But, by May 14, 1998, Cassano no longer approved of his appointed counsel. That day, he filed two *pro se* motions. One, labeled a "Waiver of Counsel," said that Cassano wanted to control his own defense. The other, labeled a "Motion for Appointment of Substitute Counsel," said that his counsel was ineffective and asked the court to appoint him another lawyer. When the old counsel withdrew, the trial court appointed the requested attorney along with two others. The court did not explicitly rule on the motion for waiver of counsel. See 1 F. 4th 458, 462–463 (CA6 2021).

On September 25, 1998, Cassano filed another motion, this time requesting to participate in the trial as co-counsel alongside his new attorneys. During a hearing that day, he reiterated that he had "a right to be co-counsel with [his] attorneys." App. to Pet. for Cert. 260a. The trial court responded that Cassano was "not going to represent [himself] in this matter," and denied the motion. *Ibid.*

On April 23, 1999—three days before trial—Cassano told the trial court that he did not think his lead attorney had prepared adequately for trial. Cassano said: "I would like my lead counsel to be here and be prepared when my trial starts." *Id.*, at 264a. A short time later, the trial court asked whether Cassano had anything else to say. Cassano responded: "Is there any possibility I could represent myself? I'd like that to go on record." *Id.,* at 265a. The judge refused, explaining that he and Cassano had "talked about it before" and that he would "be doing [Cassano] a disservice by allowing that." *Ibid.* Neither the court nor the parties discussed self-representation again. See *id.,* at 265a–271a. A jury then found Cassano guilty of aggravated murder, and he was sentenced to death.

Cassano appealed. As relevant here, he brought a claim that the trial court had violated his right to represent himself by denying what he argued were three motions requesting self-representation. The Supreme Court of Ohio affirmed in a published opinion. In a section labeled "Preliminary Issues: Self-representation," the court described the three alleged invocations before "reject[ing] Cassano's claim that his rights of self-representation were violated." *Cassano*, 96 Ohio St. 3d, at 98, 100, 772 N. E. 2d, at 90, 91.

Cassano later filed a federal habeas petition under 28 U. S. C. §2254. His "First Claim for Relief" argued that the state trial court violated his right to self-representation in the lead-up to trial, in violation of *Faretta* v. *California*, 422 U. S. 806 (1975). See Amended Pet. for Habeas Corpus in

*Cassano* v. *Bradshaw*, No. 1:03–cv–1206 (ND Ohio), ECF Doc. 138, p. 15. The District Court for the Northern District of Ohio reviewed the Supreme Court of Ohio's decision rejecting Cassano's *Faretta* arguments on direct appeal. Applying AEDPA deference, the District Court denied relief but issued a certificate of appealability on Cassano's *Faretta* claim. *Cassano* v. *Bradshaw*, 2018 WL 3455531, *18–*26, *57 (July 18, 2018).

A divided panel of the Court of Appeals reversed and conditionally granted Cassano's petition. First, it found that the Supreme Court of Ohio had not, in fact, addressed Cassano's alleged invocation of the right to self-representation in his May 1998 waiver of counsel motion. 1 F. 4th, at 467–468. The panel majority then held that Cassano had invoked his right to self-representation clearly and unequivocally despite the simultaneous, contradictory motion for substitute counsel. *Id.*, at 468–470. Second, regarding the September 1998 motion, the Court of Appeals conceded that Cassano had requested only "a form of hybrid representation," and so the Supreme Court of Ohio's "conclusion that Cassano failed to invoke his right to self-representation" in that motion was "reasonable." *Id.,* at 471. Finally, the Court of Appeals reviewed the state high court's analysis of Cassano's April 1999 motion. The Court of Appeals purported to apply AEDPA deference, but still held that "nothing about Cassano's [April] request was unclear or equivocal, and no fairminded jurist could conclude otherwise." *Id.,* at 473. The Court of Appeals conditionally granted habeas relief unless Ohio retried this quarter-century-old capital case within six months. *Id.,* at 479.

Judge Siler dissented, arguing that the panel failed to properly apply AEDPA deference to the Supreme Court of Ohio's decision. See *id.,* at 479–480. Judge Griffin and Judge Thapar (joined by Judge Nalbandian) dissented from the denial of rehearing en banc. See 10 F. 4th 695, 696 (CA6

2021). Judge Thapar maintained that the "panel disregarded federal law, spurned Supreme Court precedent, and trampled on Ohio's state courts" in order to "erroneously g[i]ve postconviction relief to a repeat murderer." *Id.,* at 700. The State filed an application with JUSTICE KAVANAUGH for a recall and stay of the Court of Appeals' mandate, which he granted pending the disposition of a writ of certiorari. 594 U. S. \_\_\_ (2021).

## II

AEDPA significantly limits federal courts' power to upset state criminal convictions. When a state court adjudicates a state prisoner's federal claim on the merits, a federal court may not grant habeas relief unless the adjudication of the claim resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" this Court's decisions, or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d). As relevant here, a decision is "contrary to" clearly established federal law if it "applies a rule different from the governing law set forth in our cases." *Bell* v. *Cone*, 535 U. S. 685, 694 (2002). A decision "involve[s] an unreasonable application of . . . clearly established law" only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington* v. *Richter*, 562 U. S. 86, 102 (2011).

Under this Court's precedents, a criminal defendant may waive his right to counsel and instead represent himself. See *Faretta*, 422 U. S., at 835. To exercise that right, a defendant must "'knowingly,'" "intelligently," "clearly[,] and unequivocally" invoke it before the trial court. *Ibid.*; see also *Raulerson* v. *Wainwright*, 469 U. S. 966 (1984) (Marshall, J., dissenting from denial of certiorari) (a defendant

has a right "to proceed without counsel if he clearly and un-
equivocally asks to do so").

## A

Applying AEDPA, this case is straightforward. To begin,
the Supreme Court of Ohio expressly addressed and adju-
dicated the merits of Cassano's various *Faretta* arguments.
The state high court labeled a section of its decision "Pre-
liminary Issues: Self-representation." *Cassano*, 96 Ohio St.
3d, at 98, 772 N. E. 2d, at 90. It then described the May
1998 waiver of counsel and the dueling request for substi-
tute counsel filed the same day. *Id.*, at 99, 772 N. E. 2d, at
90–91. It also described Cassano's September 1998 and
April 1999 motions. See *ibid.*, 772 N. E. 2d, at 91. After
recounting all three alleged invocations of the right to self-
representation, the court then cited state and federal case
law derived from *Faretta* and "reject[ed] Cassano's claim
that his rights of self-representation were violated." *Id.,* at
100, 772 N. E. 2d, at 91. The opinion leaves no doubt that
the state high court reached and decided the merits of Cas-
sano's *Faretta* claim.

But even if the Supreme Court of Ohio's opinion had not
"expressly address[ed]" Cassano's *Faretta* claim, "a federal
habeas court must presume that the federal claim was ad-
judicated on the merits" when the state court rejects it.
*Johnson* v. *Williams*, 568 U. S. 289, 301 (2013). Only if in-
disputable evidence "leads very clearly to the conclusion
that [the] federal claim was inadvertently overlooked in
state court" may a federal court review the claim *de novo.*
*Id.*, at 303. Here, it is obvious that the Supreme Court of
Ohio did not "inadvertently overloo[k]" Cassano's *Faretta*
claim or any of the claim's supporting evidence. At the very
least, nothing "very clearly" establishes that court's inad-
vertence.

Because the Supreme Court of Ohio adjudicated Cas-
sano's *Faretta* claim on the merits, AEDPA's deferential

standard applies. The court's merits decision easily survives review. No one meaningfully disputes that the court applied the correct governing rule set forth in *Faretta.* See *Cassano*, 96 Ohio St. 3d, at 99, 772 N. E. 2d, at 90. And a fairminded jurist could readily find that the Supreme Court of Ohio applied that rule reasonably.

To start, Cassano filed his May 1998 motion for waiver of counsel simultaneously with his request for substitute counsel. (They were docketed within a minute of one another.) Neither motion referenced the other. Given these simultaneous, contradictory motions, a fairminded jurist could easily agree with the Supreme Court of Ohio that Cassano did not clearly and unequivocally invoke his right to represent himself. In fact, two federal jurists would have held that Cassano made no clear and unequivocal demand to represent himself "no matter what standard of review" applies. 10 F. 4th, at 702 (opinion of Thapar, J.).

Moreover, a fairminded jurist could agree with the Supreme Court of Ohio that Cassano's April 1999 question to the state trial court—"Is there any possibility I could represent myself?" App. to Pet. for Cert. 265a—"was not an explicit and unequivocal demand for self-representation," *Cassano*, 96 Ohio St. 3d, at 100, 772 N. E. 2d, at 91. Cassano asked a "tepid question," and "[q]uestions are not demands." 10 F. 4th, at 703 (opinion of Thapar, J.). For example, a fairminded jurist could reasonably think that Cassano was asking "a contingent question inquiring whether self-representation [was] even an option for the future." *Id.,* at 698 (opinion of Griffin, J.). In that vein, the rest of the exchange suggests equivocation. Shortly before Cassano asked about self-representation, he said: "I would like my lead counsel to be here and be prepared when my trial starts." App. to Pet. for Cert. 264a. Much like Cassano's conflicting filings in May 1998 left unclear whether he did or did not want counsel, Cassano's conflicting statements in April 1999 left unclear whether he did or did not

continue to want counsel as the trial loomed.

Ultimately, the Supreme Court of Ohio's decision was one over which fairminded jurists could disagree. That is sufficient to preclude habeas relief under AEDPA.

## B

The Court of Appeals erred when it held otherwise. To begin, the Court of Appeals plainly erred when it declined to apply AEDPA deference because, in its view, the Supreme Court of Ohio had "'inadvertently overlooked'" Cassano's May 1998 dueling motions. 1 F. 4th, at 468 (quoting *Williams*, 568 U. S., at 303). The Court of Appeals pointed to two reasons for its decision. First, because the Supreme Court of Ohio "explicitly address[ed] whether Cassano invoked his right to self-representation on either September 25, 1998 or April 23, 1999," and did not as explicitly address the May 1998 motions, the Court of Appeals thought that the state court must have inadvertently overlooked those motions. 1 F. 4th, at 468. Second, the Court of Appeals observed that the Supreme Court of Ohio "referred to Cassano's September 25, 1998 motion as the 'only written motion' and his statements at the April 23, 1999 hearing as the only time he 'mention[ed] that he wanted to represent himself.'" *Ibid.* (quoting *Cassano*, 96 Ohio St. 3d, at 100, 772 N. E. 2d, at 91).

Even assuming that the Supreme Court of Ohio did not expressly address Cassano's *Faretta* claim, but see *supra,* at 5–6, the Court of Appeals did not properly apply the presumption of merits adjudication. As stated above, that presumption is rebutted only by "evidence lead[ing] *very clearly* to the conclusion that [the] federal claim was inadvertently overlooked in state court." *Williams*, 568 U. S., at 303 (emphasis added). Simply "issu[ing] an opinion that addresses some issues but does not expressly address [a] federal claim in question" cannot alone be evidence leading "very clearly" to the conclusion that the federal claim was

inadvertently overlooked. *Id.,* at 292, 303. To the extent the Court of Appeals relied on what it perceived to be the lack of any explicit discussion of the May 1998 motions, it erred.

As for the Supreme Court of Ohio's statements regarding the September 1998 motion and the April 1999 hearing, this evidence also falls far short of showing that the state high court did not adjudicate the merits of Cassano's *Faretta* claim based on the May 1998 motions. Again, in the section entitled "Preliminary Issues: Self-representation," the Supreme Court of Ohio specifically described the dueling motions that Cassano filed. See *Cassano*, 96 Ohio St. 3d, at 99–100, 772 N. E. 2d, at 90–91. Only nine sentences later the court "reject[ed] Cassano's claim that his rights of self-representation were violated." *Id.*, at 100, 772 N. E. 2d, at 91. It is implausible that the court neglected or forgot about what it had just recounted. The absence of further, specific discussion is more likely a reflection of the state high court's judgment that the argument was "too insubstantial to merit [further] discussion" once already flagged in the opinion. *Williams*, 568 U. S., at 299. The May 1998 waiver of counsel, simultaneously contradicted by a request for new counsel, simply did not count for much of anything. At the very least, the statements identified by the Court of Appeals were insufficient to overcome the presumption of merits adjudication by "very clearly" showing that the Supreme Court of Ohio overlooked the May 1998 motions, instead of tersely dismissing them. *Id.,* at 303.

The Court of Appeals likewise erred when, purporting to apply AEDPA deference to the Supreme Court of Ohio's assessment of Cassano's April 1999 motion, it nevertheless found the state court's decision objectively unreasonable. See 1 F. 4th, at 474. It bears repeating: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [that] decision." *Harrington*, 562

U. S., at 101 (quoting *Yarborough* v. *Alvarado*, 541 U. S. 652, 664 (2004)). As discussed above, *supra,* at 7, the Supreme Court of Ohio's decision that Cassano's tepid April 1999 question on the eve of trial "was not an explicit and unequivocal demand for self-representation," *Cassano*, 96 Ohio St. 3d, at 100, 772 N. E. 2d, at 91, was "at least debatable," 562 U. S., at 110.

Perhaps recognizing that the substance of Cassano's April 1999 motion—a single question—did not suffice, the Court of Appeals emphasized the "context" in which the question was asked. 1 F. 4th, at 474. It noted that, at the earlier September 1998 hearing, the trial court had told Cassano that he was "'not going to represent [himself] in this matter,'" and that the law did not require the court to allow him to represent himself. *Ibid.*; see App. to Pet. for Cert. 260a. Taking into account that statement and the court's "stern admonishment" during the September hearing "that Cassano would never be allowed to even speak in the courtroom," the Court of Appeals held that "no fair-minded jurist could conclude" that Cassano's April 1999 question "was unclear or equivocal." 1 F. 4th, at 474.

The Court of Appeals' analysis is obviously wrong. First, the Court of Appeals ignored the more immediate context of the April 1999 hearing, which supports the Supreme Court of Ohio's reasoned decision. Cassano equivocated at the April hearing. He first demanded counsel's presence at the trial, then asked about self-representation, and then accepted counsel's help. That context suggests equivocation just as much as his tepid question does.

Second, the "context" that the Court of Appeals chose to highlight does not help Cassano's cause. The state trial court made the September 1998 comments at a hearing in which it rejected Cassano's request to be appointed *co-counsel* with his attorneys, which (as the Court of Appeals itself recognized) he had no right to demand. See *id.,* at 471; see *McKaskle* v. *Wiggins*, 465 U. S. 168, 183 (1984) ("*Faretta*

does not require a trial judge to permit 'hybrid' representation"). A fairminded jurist could find that those September 1998 comments, made in a hearing about a distinguishable issue some seven months before, did not somehow transmogrify an ambiguous and equivocal question into a clear and unequivocal invocation of a constitutional right.

Third, as for the trial court's conduct at the April 1999 hearing itself, it did not "admonis[h]" Cassano against "even speak[ing] in the courtroom." 1 F. 4th, at 474. Rather, the trial court *solicited* questions from Cassano. Cassano took that opportunity to complain about his counsel, demand their presence at his trial, and inquire about self-representation. See App. to Pet. for Cert. 264a–265a. A fairminded jurist could find that none of his statements invoked his right to self-representation in clear and unequivocal terms, and that he was not coerced into silence by the trial court. That is all it takes to satisfy AEDPA.

## III

Because the Court of Appeals' decision was obviously wrong and squarely foreclosed by our precedent, this case merits summary reversal. See *Presley* v. *Georgia*, 558 U. S. 209, 217 (2010) (THOMAS, J., dissenting); S. Shapiro, K. Geller, T. Bishop, E. Hartnett, & D. Himmelfarb, Supreme Court Practice §5.12(c), p. 5–44 (11th ed. 2019) (Shapiro). In fact, summary reversal is particularly appropriate because the Court of Appeals "committed [a] fundamental erro[r] that this Court has repeatedly admonished [it] to avoid." *Sexton* v. *Beaudreaux*, 585 U. S. \_\_\_, \_\_\_ (2018) (*per curiam*) (slip op., at 7); Shapiro §5.12(c), at 5–45. This is far from the first time that the Sixth Circuit has failed to apply the deference that AEDPA and our governing precedents demand. See, *e.g., Rapelje* v. *Blackston*, 577 U. S. 1019, 1021 (2015) (Scalia, J., dissenting from denial of certiorari) ("The Sixth Circuit seems to have acquired a taste for disregarding AEDPA"). Over the last two decades, we have

reversed the Sixth Circuit almost two dozen times for failing to apply AEDPA properly. See 10 F. 4th, at 696–697 (listing cases). Many of those reversals have been summary. See *ibid.* The Court should add this case to the list.

Instead, the Court chooses to leave in place a clearly erroneous decision that relieves Cassano of his death sentence. In doing so, the Court inflicts a harm on "the State and its citizens." *Shinn* v. *Martinez Ramirez*, 596 U. S. ___, ___ (2022) (slip op., at 22). By saddling the State with the risk and expense of retrying a repeat murderer's quarter-century-old capital case, the Court permits the Court of Appeals to "intrud[e] on [Ohio's] sovereignty to a degree matched by few exercises of federal judicial authority." *Id.*, at ___ (slip op., at 7) (internal quotation marks omitted). At worst, the State has lost its sovereign right to "enforce societal norms through criminal law." *Ibid.* (internal quotation marks omitted). At best, if the retrial results in the same verdict and sentence, the Court will have consigned the State to several decades' worth of additional death penalty appeals. See *Ramirez* v. *Collier*, 595 U. S. ___, ___–___ (2022) (THOMAS, J., dissenting) (slip op., at 6–7). Ohio and its citizens deserve better.

* * *

The Court of Appeals should have faithfully applied AEDPA deference and denied the writ. Its failure to do so "illustrate[d] a lack of deference to the state court's determination and an improper intervention in state criminal processes, contrary to the purpose and mandate of AEDPA and to the now well-settled meaning of and function of habeas corpus in the federal system." *Harrington*, 562 U. S., at 104. Because I would grant the State of Ohio's petition and summarily reverse, I respectfully dissent from denial of certiorari.